**Joe Leonard LAMBRIGHT, Petitioner,**

v.

**Samuel A. LEWIS and Robert Goldsmith, Respondents.**

**No. CIV 87–235 TUC RMB.**

United States District Court,
D. Arizona.

July 9, 1996.

began a cross country driving trip from Texas, to Florida, and then on to California, stopping in Arizona. Foreman was Lambright's lover who frequently engaged in sexual intercourse with Lambright in Smith's presence. The trio stopped outside Tucson and camped for the night. Smith became angry when he observed Lambright and Foreman once again having sex. He complained that Lambright, unlike Smith, had all the sex he wanted and that it was not easy to find someone.

The following day, the three drove into Tucson and went to a restaurant. Smith again spoke about wanting a woman, and Lambright spoke about wanting to "kill somebody just to see if he could do it." Lambright then told Foreman that they were going to go find someone for Smith.

After driving around town for quite a while, the trio saw a young woman hitchhiking near the University of Arizona campus. Twenty-nine year old Sandy Kay Owen explained to them that she was trying to get to the food stamp office. They drove Owen to the food stamp office and parked behind the building. Lambright jumped into the back seat with Owen and told her to "shut up and be quiet and she wouldn't get hurt." Smith moved to the driver seat and headed toward the freeway.

At some point during the drive toward California, Lambright began driving, with Smith in the back seat with Owen. Smith had sex with Owen in the back seat, on the freeway, heading northwest. Owen asked if they would let her go.

The group later left the freeway and proceeded on a dirt road in a mountainous area of Pinal County. They left the car at the end of the dirt road and traveled on foot to a level area on a mountain. At the level area, Lambright and Foreman again had intercourse and Smith again had sex with Sandy Owen.

Smith began choking Sandy and she collapsed to the ground. Lambright said that she had to be killed so that she could not report their crimes. He took Foreman's knife and began stabbing Ms. Owen in the torso and chest, twisting the knife around

David P. Tiers, Thomas E. Higgins, Tucson, AZ, for petitioner.

Grant Woods, Attorney General, Phoenix, Eric J. Olsson, Assistant Attorney General, Tucson, for respondent.

## AMENDED MEMORANDUM OPINION AND ORDER

BILBY, District Judge.

Joe Lambright, under sentence of death, seeks habeas corpus relief. This Court has jurisdiction pursuant to 22 U.S.C. § 2241 and 22 U.S.C. § 2254, and herein denies the petition.

## FACTUAL BACKGROUND

In early 1980, Joseph Leonard Lambright, Robert Douglas Smith and Kathy Foreman

inside her. Smith and Foreman each held one of her arms, as the victim tried to resist. Smith attempted to break her neck by twisting her head, but was unsuccessful. Lambright, and possibly Foreman, then began cutting into Ms. Owen's neck. Sandy Owen was still alive and was trying to lift herself up on one arm. At that point, Lambright threw a large rock at Sandy's head, yelling, "Die, bitch."

The trio took some jewelry from the victim's body then covered it with rocks, and headed toward San Diego. In the car they played a song on tape entitled "We are the Champions." In San Diego, they pawned Owen's ring before driving on to Anaheim, Las Vegas and finally back to Texas.

About a year later, law enforcement received a tip about the crime and the three were separately questioned. Each made statements to the police. Foreman was granted immunity from prosecution for her testimony against Lambright and Smith, who were returned to Arizona for prosecution.

## PROCEDURAL BACKGROUND

Petitioner Joe Leonard Lambright, was convicted by a jury of murder in the first degree, kidnapping and sexual assault. Although Pima County Superior Court Judge Michael V. Brown severed the cases of Lambright and Smith, there was a single trial with two juries. Evidence that was relevant to both was presented to both juries and evidence admissible against only one, was presented before only that jury. The court sentenced Lambright to death for the murder and to twenty-one years imprisonment to run consecutively on each of the remaining convictions.

Lambright appealed to the Arizona Supreme Court, which affirmed the conviction and sentence in *Arizona v. Lambright,* 138 Ariz. 63, 673 P.2d 1 (1983). The United States denied certiorari in *Lambright v. Arizona,* 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984).

Pursuant to ARIZ.R.CRIM.P. 32, the Petitioner then sought post-conviction relief in the trial court. Finding the claims to be either precluded or not colorable, the trial court denied relief. Following denial of his request for rehearing in the trial court, the Petitioner then sought review in the Arizona Supreme Court. That court denied the petition for review on July 9, 1986 and set execution for April 29, 1987.

Mr. Lambright filed his original habeas corpus petition in this Court on April 14, 1987 and this Court promptly stayed the execution. The State of Arizona moved to dismiss the petition on the grounds of procedural default and the presence of unexhausted claims. This Court granted the Respondents' motion and dismissed the mixed petition without prejudice, but retained jurisdiction and continued the stay of execution.

After nearly two years of apparent inactivity, Lambright was appointed new counsel, who filed another Rule 32 petition in state court. The trial court denied the Petitioner's amended Rule 32 petition, and the Supreme Court denied review without comment.

The Petitioner then sought authorization from this Court for expenditure of funds. He wanted to employ various experts and investigators in order to develop the claim that trial counsel's failure to present evidence of the Petitioner's mental health status was ineffective assistance of counsel. This Court considered Lambright's request three times, and three times denied it, concluding that Lambright had not established cause and prejudice to overcome procedural default.

Lambright filed his Amended Petition for Writ of Habeas Corpus on February 23, 1995. He also subsequently filed another Rule 32 notice in state court, for the first time raising the issue of ineffective assistance of counsel on direct appeal. The trial court refused to allow such a claim, finding it barred by failure to raise it in the two previous post-conviction relief proceedings. The Respondents then filed an answer to Lambright's amended habeas petition on August 22, 1995, and Lambright filed his reply on November 29, 1995. The Court denied, without prejudice, Lambright's motion for evidentiary hearing and oral argument on February 8, 1996. On April 22, 1996, this Court received a certified copy of the state record. Following months of effort by this Court to

obtain a complete state court record, Lambright's petition for relief is appropriate for federal habeas review.

## DISCUSSION

The Petitioner raises thirty grounds for relief in the Amended Petition, arranged under the headings of (1) ineffective assistance of counsel claims; (2) trial claims; and (3) sentencing claims. The Court considers the claims in turn, and for clarity and for convenience to the reader, organizes the issues in the same manner as the Amended Petition.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS (Claims 1–4)

As mentioned above, the Petitioner previously moved this Court for authorization of funds for experts and investigators in order to develop an ineffective assistance of trial counsel claim. The Petitioner's theory is that trial counsel's failure to present evidence of the Petitioner's mental health status was ineffective assistance of counsel. The Petitioner posited that at the time of trial evidence existed, but was not presented, that would have demonstrated significant mental health problems. This evidence allegedly includes, post traumatic stress syndrome episodes as a result of combat service in Vietnam, two suicide attempts, and an emotional breakdown after his father's death and during the decline of his marriage. Despite the Court's previous rulings finding the claims procedurally defaulted, the Petitioner continues to press his assertions of ineffective assistance of counsel.

Specifically, Lambright complains that trial counsel failed to investigate, develop and present mitigation evidence with respect to his mental health, family background and military service. Counsel did not attend and did not prepare Lambright for the presentence interviews or psychological evaluation. Counsel did not consult with Lambright regarding sentencing procedures and did not employ a presentence investigator or mental health expert for use at sentencing. He did not advocate on Lambright's behalf at the sentencing and did not request a pretrial competency hearing. He did not make an opening statement and did not consider the possible effect of sustained drug use on the case. Trial counsel also failed to request a jury instruction on lesser included offenses to first degree murder. The Court concludes, however, that these claims cannot be considered on the merits.

## A. The Doctrine of Procedural Default and the Exhaustion Requirement

■ A state court prisoner's federal habeas petition must be dismissed if he has not exhausted remedies available in the state. 28 U.S.C. § 2254(b); *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886); *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). *See also Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (holding that federal claims must first be fairly presented to state courts before being presented to federal courts); *Middleton v. Cupp,* 768 F.2d 1083, 1086 (9th Cir.1985) (stating that exhaustion requires fair presentation the state's highest court), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3336, 92 L.Ed.2d 741 (1986). This exhaustion requirement is based on notions of comity and respect for the state courts' role in vindicating the federal rights of state prisoners. *Rose,* 455 U.S. at 516–18, 102 S.Ct. at 1202–03; *Hendricks v. Zenon,* 993 F.2d 664, 672 (9th Cir.1993). A federal court defers ruling on unexhausted claims that are otherwise properly before it, so that the state court has the first opportunity to correct claimed violations. *Id.*

■ Like the habeas petitioner who does not exhaust his state court remedies, a petitioner who fails "to meet the state's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson,* 501 U.S. 722, 732, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991). *See also Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (determining that a claim has not been fairly presented to the state court to satisfy the exhaustion requirement when it is presented in a procedurally inappropriate manner that renders consideration of the merits unlikely). This is procedural default, which is simply an application

of the doctrine of adequate and independent state grounds. *English v. United States,* 42 F.3d 473, 477 (9th Cir.1994) (citing *Coleman,* 501 U.S. at 729–31, 111 S.Ct. at 2553–55).

 The doctrine of adequate and independent state grounds dictates that a federal court will not review a state court decision that rests on a state law ground, either substantive or procedural, that is independent of federal law and is adequate to sustain the decision. *Fox Film Corp. v. Muller,* 296 U.S. 207, 210, 56 S.Ct. 183, 184, 80 L.Ed. 158 (1935). Where a state court declines to consider a state prisoner's federal claims because he failed to meet a state procedural requirement, this doctrine bars federal habeas review. This is because the state court decision rests on independent, adequate state procedural grounds. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. at 2553–54 (citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Ulster County Court v. Allen,* 442 U.S. 140, 148, 99 S.Ct. 2213, 2219, 60 L.Ed.2d 777 (1979); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)). It is this doctrine that prevents a state prisoner from defaulting his federal claims in state court and avoiding the exhaustion requirement. *Coleman,* 501 U.S. at 732, 111 S.Ct. at 2555.

 A state court judgment rests on adequate and independent state law grounds where it does not fairly appear to rest primarily on federal law or is not interwoven with federal law. Where there is a clear and express statement that the state court is relying on a state procedural default as the basis for decision, independent of federal law, the state's judgment is based on adequate, independent state law grounds. *See Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983) (requiring that state law ground be clear from the face of the opinion); *Caldwell v. Mississippi,* 472 U.S. 320, 327, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985) (applying

*Long* to procedural default grounds); *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 1043–44, 103 L.Ed.2d 308 (applying *Caldwell* and *Long* in a habeas case).

In this case, the state procedural rule at issue is ARIZ.R.CRIM.P. 32.2(a)(3).[1] That rule precludes state collateral review of claims waived at trial, on appeal, or in any previous collateral proceedings.

Lambright first raised the federal claim of ineffective assistance of trial counsel in state court in his initial Rule 32 post-conviction relief petition. As explained in this Court's previous rulings (Orders of June 20, 1995; Mar. 8, 1995; July 11, 1994), state law prevailing at the time of Lambright's conviction, sentence and appeal, required that ineffective assistance claims be raised on direct appeal.

The Arizona appellate courts, at that time, either decided ineffectiveness claims based on the record before them, or returned the claims to the trial court for a hearing. *See e.g., Arizona v. Watson,* 114 Ariz. 1, 559 P.2d 121 (1976) (resolving on direct appeal those submitted ineffective assistance of counsel claims that did not raise matters outside the record and directing the trial court to consider submitted colorable claims raising matters outside the record), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *Arizona v. Zuck,* 134 Ariz. 509, 515, 658 P.2d 162, 168 (1982) (en banc) (noting that "[i]n the past, when the issue of competency of trial counsel has been raised, we have always resolved the matter with whatever was before us in the record," and concluding that in some cases, "it would be appropriate to remand the case for a hearing on the question").[2]

While it is true that trial competency claims were at times remanded to the trial court for hearing, there is no support for the contention that those claims need not have been first presented to the appellate court on

---

**1.** All references to ARIZ.R.CRIM.P. 32.2(a) are to the rule as it existed at the time of Lambright's trial, appeal and petitions for post-conviction relief. The rule was promulgated in 1955 and made effective January 1, 1956. It was amended on August 1, 1975 and was not further amended until 1992. The 1975 version is the subject of this habeas petition.

**2.** *See also Arizona v. Scrivner,* 132 Ariz. 52, 643 P.2d 1022 (Ct.App.1982) (denying Rule 32 relief because the petitioner did not raise ineffectiveness claim on direct appeal).

direct appeal. During the relevant time frame, direct appeal was considered "the preferred method for presenting claims of reversible error." *Arizona v. Carriger,* 143 Ariz. 142, 144, 692 P.2d 991, 994, 996 (1984) (en banc) (finding the death sentenced defendant's failure to raise ineffective assistance of counsel claim on direct appeal constituted waiver of the right to claim error), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985).[3] "Important policy considerations require that all claims be raised in the appeal." *Id.* 143 Ariz. at 146, 692 P.2d at 995.

The applicable procedural rule at the time provided that "[a] petitioner will not be given relief under this rule based upon any ground ... [k]nowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding." ARIZ. R.CRIM.P. 32.2(a). That rule made no exception for ineffectiveness claims.

The trial court judge relied on that procedural rule in finding Lambright's ineffectiveness claims barred when considering the first Rule 32 petition in 1985. Judge Brown stated:

> [T]his case was appealed on behalf of Mr. Lambright by an experienced criminal appellate attorney, not the trial attorney, who examined the entire record and transcript and failed to raise the issue on appeal, a knowing, voluntary and intelligent waiver, therefore the defendant is precluded under Rule 32.2(a)(3), and the court finds that there is in fact no colorable claim of ineffectiveness.

(Pima County Superior Court Minute Entry of Apr. 17, 1985 at 8). The Judge found Lambright's ineffectiveness claim precluded and found it not colorable. While he did apparently speak to the merits, Judge Brown's explicit determination that the claim

was precluded is an alternative holding that maintains the procedural bar. *Sochor v. Florida,* 504 U.S. 527, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Carriger v. Lewis,* 971 F.2d 329 (9th Cir. 1992), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *Thomas v. Lewis,* 945 F.2d 1119, 1122–23 (9th Cir.1991).

It was not until 1989 that the Arizona Supreme Court first intimated that ineffectiveness claims would be more properly raised via a Rule 32 proceeding than on direct appeal. In *Arizona v. Valdez,* 160 Ariz. 9, 770 P.2d 313 (1989) (en banc), the court stated:

> As a general matter, we recommend that when a defendant wishes to raise the question of ineffective assistance during the pendency of his appeal, he should file the proper petition under Rule 32, Ariz. R.Crim.P., 17 A.R.S., in the trial court and seek an order from the appellate court suspending the appeal. The trial court should then hold an evidentiary hearing and make its ruling. Afterward, a defendant should seek to consolidate the post-conviction proceedings with the direct appeal. See Rule 31.4, Ariz.R.Crim.P., 17 A.R.S.

*Valdez,* 160 Ariz. at 15, 770 P.2d at 319.[4]

The court continued to consider ineffectiveness claims on direct appeal. Shortly after *Valdez,* the court reached the merits of a death penalty defendant's claims of incompetent counsel in *Arizona v. Walton,* 159 Ariz. 571, 769 P.2d 1017 (1989) (en banc), *aff'd by* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). The procedural practice of ineffectiveness claims on direct appeal continued even into 1989.

Later that year, the state supreme court refused to consider an ineffectiveness claim

---

**3.** The *Carriger* court held that the defendant's ineffectiveness claims were barred by state law but nonetheless reached the merits in light of *Beck v. Alabama,* 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980) (noting that the death penalty is different from any other sentence). The court ultimately affirmed the trial court's denial of Carriger's Rule 32 petition claiming ineffective assistance of counsel. *Carriger,* 692 P.2d at 1008.

**4.** Mr. Valdez's ineffectiveness claim was subsequently considered by the trial court in a Rule 32 proceeding. The Arizona Supreme Court affirmed the trial court's finding that Valdez did not suffer ineffective assistance of counsel. *Arizona v. Valdez,* 167 Ariz. 328, 332, 806 P.2d 1376, 1380 (1991) (en banc).

on direct appeal, ruling that "[o]nly, where we may clearly determine from the record that the ineffective assistance is meritless, will we elect to consider the issue on direct appeal." *Arizona v. Carver*, 160 Ariz. 167, 175, 771 P.2d 1382, 1390 (1989) (en banc) (reaching the merits and denying the claim). *See also Arizona v. Marlow*, 163 Ariz. 65, 69–70, 786 P.2d 395, 399–400 (1989) (en banc) (citing *Carver* and determining that ineffectiveness claims should be raised by counsel other than trial counsel).

■ At this point, it became clear that a defendant may pursue the federal ineffectiveness claim in the trial court, while his direct appeal is stayed. Until this point, the defendant was required to raise the claim on appeal and await the appellate court's determination of whether a hearing was required to further develop the record. The Petitioner did not do so. He has, therefore procedurally defaulted his claims of ineffective assistance of counsel.

Lambright presents several arguments in his effort to avoid procedural default. He argues first that procedural default is inapplicable because the state's high court did rule on his ineffectiveness claims. He then argues that, for a variety of reasons, the trial court's finding of procedural bar does not rest on adequate, independent state law grounds. These arguments are unavailing.

Lambright asserts that there has been no default because the Arizona Supreme Court conducted review for fundamental error on direct appeal. This fundamental error review, the Petitioner states, includes review of the proficiency of counsel, as the right to counsel is a fundamental right. *See Arizona v. Brewer*, 170 Ariz. 486, 826 P.2d 783 (1992) (en banc), *cert. denied*, 506 U.S. 872, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992); *Arizona v. Sorrell*, 132 Ariz. 328, 645 P.2d 1242 (1982); *Arizona v. Smith*, 136 Ariz. 273, 279, 665 P.2d 995, 1001 (1983) (en banc) (holding that ineffective assistance of counsel at sentencing is within fundamental error review). Therefore, the Petitioner concludes that he has fairly presented his ineffectiveness claims to the state's highest court, who reviewed its merits and implicitly denied the claims. Thus, there has been no default and the claims are not precluded from federal habeas review.

The Petitioner quotes Judge Brown's minute entry that states:

[T]he issue existed factually prior to appeal; the Arizona Supreme Court looked at the entire sentencing process exhaustively, testing it for error of constitutional dimension and found none. There is therefore the suggestion and strong inference that the claim is precluded under Rule 32.2(a)(2).

(Pima County Superior Court Minute Entry of Mar. 4, 1986 at 4). This, according to Lambright, indicates that Judge Brown found the claims precluded under 32.2(a)(2)—not 32.2(a)(3). Rule 32.2(a)(2) precludes relief for claims that have already been adjudicated. Lambright urges that if Judge Brown's denial rested on the supreme court's consideration of the ineffective claims on direct appeal, then this shows there is no federal bar to a review on the merits.

Assuming the Petitioner is correct that a state court finding of preclusion under Rule 32.2(a)(2) does not bar federal relief, his position is not supported by the stated rationale of Judge Brown's ruling. Upon consideration of Lambright's motion for rehearing on the April 17, 1985 denial of his Rule 32 petition, Judge Brown did not base his finding of preclusion solely on Rule 32.2(a)(2). While Judge Brown acknowledged a "strong inference" that the claim was precluded under 32.2(a)(2), he explicitly made a finding "that since it clearly could have been raised on direct appeal, that it has been knowingly, voluntarily and intelligently waived by failure to raise it, and is therefore precluded pursuant to Rule 32.2(a)(c) [presumably intended as 32.(a)(3) ] and (c)." (Pima County Superior Court Minute Entry of Mar. 4, 1986, at 4–5).

Moreover, this argument was recently considered and rejected by the Ninth Circuit Court of Appeals. "Under Arizona law, fundamental error review does not prevent subsequent procedural preclusion." *Martinez–Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.1996) (citing *Arizona v. Lopez*, 170 Ariz. 112, 117, 822 P.2d 465, 470 (Ct.App.1991)).

This Court, as did the Ninth Circuit, finds no merit in this position.

Next, the Petitioner contends that Rule 32.2 is not an adequate state ground to preclude habeas review because his ineffectiveness claims were not known at the time of his direct appeal. Lambright explains that 32.2(b) provided for an exception to rule 32.2(a) preclusion where there "has been a significant change in the law ... and there are sufficient reasons to allow retroactive application of the changed legal standard." ARIZ.R.CRIM.P. 32.1(g).[5] He concludes that *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) constitutes a significant change in the law within the meaning of 32.1(g), and so his ineffective claims are exempted from preclusion.

The Petitioner points out that prior to *Strickland,* an Arizona defendant complaining of deficient counsel was required to show that his trial counsel's conduct reduced the proceedings to a farce, sham or mockery of justice. *See Arizona v. Garcia*, 133 Ariz. 522, 652 P.2d 1045 (1982) (en banc). In *Arizona v. Nash,* 143 Ariz. 392, 694 P.2d 222 (en banc), *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), the Arizona Supreme Court recognized that *Strickland* altered the prior Arizona test articulated in *Arizona v. Watson,* 134 Ariz. 1, 4–5, 653 P.2d 351, 354–55 (1982) and it modified *Watson* accordingly. *See Nash,* 143 Ariz. at 397, 694 P.2d at 227 (modifying first prong of two prong test for minimally competent representation to require counsel's actions to have fallen below objective standards of reasonable representation as measured by prevailing professional norms).

Notwithstanding the Arizona Supreme Court's recognition that *Strickland* produced a modified test for minimally competent representation, the court determined the pre- and post-*Strickland* standards were similar. *Nash,* 143 Ariz. at 397, 694 P.2d at 227. The court was directly confronted with the issue of retroactivity of *Strickland* standards in *Arizona v. Gerlaugh,* 144 Ariz. 449, 698 P.2d 694 (1985) (en banc), and declined to apply

*Strickland* standards retroactively to a post-conviction case. The court found no case where any court had ever done so, but did discover that many courts had applied effectiveness standards only prospectively. *Gerlaugh,* 144 Ariz. at 456, 698 P.2d at 701 (citing prospective application cases). It stated that the difference between the standards in Arizona before and after *Strickland* "is scarcely outcome determinative," and found no compelling reason to apply the modified standard retroactively. *Id.*

In sum, the *Gerlaugh* court made clear that in Arizona, the *Nash* modification in light of *Strickland* is to be applied prospectively only. That is, the new standard applies only to cases tried or pending appeal after January 9, 1985, the date *Nash* was decided. *Id.* Lambright's trial and appeal were completed well before January, 1985. Therefore, there has been no significant change in the law and there are no sufficient reasons to allow retroactive application of the changed legal standard under ARIZ.R.CRIM.P. 32.1(g), 32.2(b).

■ Similarly, Lambright also posits that his waiver of his ineffectiveness claims could not have been knowing and voluntary under Rule 32.2(a)(3) because *Strickland* had not been decided at the time of his direct appeal. A claim is not procedurally defaulted from post-conviction review if the claim not raised on appeal was a constitutional issue unknown at the time of the appeal. *Myers v. Washington,* 646 F.2d 355, 359–60 (9th Cir.1981), *judgment vacated on other grounds,* 456 U.S. 921, 102 S.Ct. 1964, 72 L.Ed.2d 436 (1982). Appellate counsel cannot be expected to "anticipate how constitutional law would evolve over the next twenty years," and he need not fear omitting "what appears at the time to be a futile constitutional argument." *Id.* at 360.

That is clearly not the situation in this instance. As noted above, the pre- and post-*Strickland* standards were similar. *Myers* addressed the situation where the constitutional issue was one that had not been previously identified. *Id.* at 359.

---

**5.** All references to ARIZ.R.CRIM.P. 32.1 are to the 1956 version which was in effect at the time of Lambright's trial, appeal, and petitions for post-conviction relief. The rule was subsequently amended in 1992.

Lambright acknowledges that competence of counsel existed as a constitutional issue well before his case began. *Strickland* itself instructed that cases decided under different standards need not be reassessed in the light of the changes in the test for ineffective assistance of counsel. *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2068–69. Further, the Second Circuit has observed that, after years of applying the farce, sham and mockery and minimal competency tests, the court has never found a case that turned on the choice of standard. *Trapnell v. United States,* 725 F.2d 149, 153 (2d Cir.1983). This case does not either.

■ Lambright next contends that *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) suggests that a state court's procedural rules should be relaxed where the claim is one of ineffective assistance of counsel. That case noted that when the same lawyer represents the defendant at trial and on direct appeal, there is little chance for ineffectiveness issues to be discovered. A lawyer cannot easily recognize his own errors and a lay defendant probably could not without consulting separate counsel. *Id.* at 378 (refusing to extend *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) to bar Sixth Amendment habeas corpus action where the claimed ineffectiveness was the failure to challenge an alleged Fourth Amendment violation).

Those concerns do not exist in Mr. Lambright's case. He was represented by separate counsel on appeal. The factual basis existed and could have been presented by appellate counsel. The choice not to do so does not call for any relaxation of the state's procedural rules. Any complaint that the direct appellate process is insufficient due to its limited ability to conduct fact-finding should have been addressed to the appellate court, who could, and frequently did in other cases, stay its proceeding to allow fact-finding in the trial court. Had Lambright desired to present mitigation evidence, the appellate court could have returned the claim to the trial court for that purpose. His failure to raise the issue prevented the appellate court from so directing or otherwise considering the claim. Lambright's ineffective

claim would not have been forfeited, had he followed the established procedure explained in *Watson* and *Carriger.* In sum, Lambright was provided a real and meaningful opportunity to make his ineffectiveness claim on direct appeal. That opportunity was not so ill-defined as to justify excusing Lambright's failure. He suffered no violation of his rights to due process in being required to present the claim first on direct appeal.

■ Lambright next argues that the state rule is not adequate because it has not been regularly and consistently applied by Arizona courts. He correctly points out that a state rule, to be an adequate ground barring federal review, must be firmly established and regularly applied at the time of the default. *Ford v. Georgia,* 498 U.S. 411, 423–24, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991); *Dugger v. Adams,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989); *Hathorn v. Lovorn,* 457 U.S. 255, 262–63, 102 S.Ct. 2421, 2426–27, 72 L.Ed.2d 824 (1982); *Harmon v. Ryan,* 959 F.2d 1457 (9th Cir.1992). Referring to six state cases, Lambright attempts to illustrate Arizona's failure to consistently apply Rule 32.2(a)(3) to claims of incompetent counsel.

It is interesting to note that of the six cases Lambright cites, only two address the issue of procedural bar under Rule 32.2. Neither of those cases are helpful to Lambright's position. In *Arizona v. Scrivner,* 132 Ariz. 52, 643 P.2d 1022 (Ct.App.1982), the appellate court found the ineffectiveness claim raised for the first time in a post-conviction petition procedurally barred due to waiver. This is proper and consistent with the state supreme court rulings of the time, as discussed above. The second case relied upon by Lambright that addresses procedural bar is *Arizona v. Carriger,* 132 Ariz. 301, 645 P.2d 816 (1982). In that case, the supreme court rejected the government's contention that the ineffectiveness claim was procedurally barred. The basis of that bar was 32.2(a)*(2)*—not 32.2(a)*(3).* Rule 32.2(a)(2) bars only those claims that were raised and considered by the appellate court. As such, *Carriger* is inapposite.

Perhaps more importantly, the Ninth Circuit recently made clear that the

contention that the Arizona Supreme Court has not regularly and consistently relied on procedural default has no merit. *See Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir.1992), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993) (rejecting argument that Arizona's reliance on procedural default was so unpredictable and irregular that it does not provide an adequate ground for disposing of claims). *Martinez–Villareal v. Lewis*, 80 F.3d 1301, 1306 (9th Cir.1996) (parallel citation and additional history omitted, style added). Lambright's argument that the Arizona Supreme Court did not consistently and regularly apply Rule 32.2(a)(3) is unavailing.[6]

The Petitioner next challenges the trial court's finding that he had knowingly and voluntarily waived the ineffectiveness claim by failing to raise it on direct appeal.

■ Failure to comply with Rule 32 procedures results in a determination that the petitioner waived his right to present a Rule 32 petition. *Arizona v. Herrera*, 121 Ariz. 12, 588 P.2d 305 (1978) (en banc), *cert. denied*, 441 U.S. 949, 99 S.Ct. 2175, 60 L.Ed.2d 1054 (1979). Rule 32.2(c) allows for the inference of a waiver where a petitioner does not raise a claim on appeal after having been advised of his right to do so by the sentencing judge. The sentencing judge need not identify every possible appellate issue that could be available. Judge Brown noted on the record that an appeal would be automatically filed. Lambright was appointed appellate counsel. No provision of Rule 32 created an exception for ineffectiveness claims that would remove them from the Rule 32.2(a)(3) requirement of raising all available issues on direct appeal.

■ The Petitioner's self-serving affidavit that he did not know that he was required to raise ineffectiveness claims on direct appeal does not overcome the inference of waiver. *Arizona v. Wilson*, 179 Ariz. 17, 20, 875 P.2d 1322, 1325 (Ct.App.1993). While he claims to

have been unaware of the requirement, he did request separate counsel for his direct appeal.

■ His appellate counsel's affidavit states that counsel was not aware of a procedural rule requiring ineffectiveness claims be brought on direct appeal and he did not so inform Lambright. Appellate counsel would have indeed been hard pressed to find a procedural rule that specifically stated that ineffective assistance of counsel claims must be raised on direct appeal. "The type of issues an appellant can raise in an appeal and the number of issues an appellant can raise are not limited by a per se rule. Cf. Ariz. Const.Art. 2, s 24; A.R.S. s 13–4031; Rule 31.13(c)(1)(iv) (none of which set any limits on appeal)." *Arizona v. Carriger*, 143 Ariz. 142, 692 P.2d 991 (1984) (en banc), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985). There is no case or rule that exhausts the list of possible issues to be raised on appeal. Rather, there is a body of Arizona Supreme Court law which, as discussed above, required presentation of ineffectiveness claims on direct appeal. Further, Rule 32 provides that unless a claim is exempted, if it could have been brought on direct appeal, it is included in 32.2(a)(3). The appellate lawyer stated in his affidavit that he would have raised ineffectiveness on appeal had he reviewed the record under *Strickland*. This indicates that Lambright's appellate counsel knew that ineffectiveness *could* be raised on direct appeal. The mere fact that counsel failed to recognize the factual or legal basis for a claim or failed to raise the claim despite recognizing it does not overcome a procedural default. *Murray v. Carrier*, 477 U.S. 478, 487–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986).

■ Whether Judge Brown found a waiver based upon an inference from 32.2(c) or from the circumstances, his conclusion is supported by the record. Moreover, "a finding of procedural default requires only that the

---

**6.** Lambright also cites a ruling of this Court in *McMurtrey v. Lewis*, CIV 88–844 TUC RMB, wherein the Court stated that "the State has provided no authority, nor is the Court aware of any case, which mandates that if a defendant does not raise ineffective assistance of trial coun-

sel on direct appeal, he or she is procedurally barred from doing so in the post-conviction petition." Order of Mar. 2, 1994 at 4. The most important of the distinctions between McMurtrey and Lambright is the crucial fact that Lambright was represented by separate counsel on appeal.

claim was rejected by the state court on independent and adequate state procedural grounds." This Court need not specifically decide that Judge's Brown's finding was factually correct. *Martinez–Villareal v. Lewis,* 80 F.3d 1301, 1307 (9th Cir.1996). The trial court judge did not err in finding that Lambright had waived his right to present the ineffectiveness claim in a Rule 32 petition.

Lambright's efforts to avoid procedural default are unavailing. His failure to raise his claim of ineffective assistance of counsel on direct appeal resulted in that claim being barred from collateral review pursuant to Rule 32.2(a)(3). That rule is an adequate, independent state law ground that precludes the federal habeas court from reaching the merits of the claim. However, despite Lambright's failure to properly raise his claim on appeal, this Court would excuse the procedural default and consider the claim on the merits if cause and prejudice is established or a fundamental miscarriage of justice would result. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992); *Noltie v. Peterson,* 9 F.3d 802, 804–05 (9th Cir.1993).

### B. Cause and Prejudice

▪ A federal habeas court will not review a claim that the state court has found procedurally defaulted unless the petitioner can demonstrate cause and prejudice, *Wainwright v. Sykes,* 433 U.S. 72, 87, 97, 97 S.Ct. 2497, 2506–07, 2511–12, 53 L.Ed.2d 594 (1977), or a fundamental miscarriage of justice. *Murray v. Carrier,* 477 U.S. 478, 494–95, 106 S.Ct. 2639, 2648–49, 91 L.Ed.2d 397 (1986); *Engle v. Isaac,* 456 U.S. 107, 109, 102 S.Ct. 1558, 1562, 71 L.Ed.2d 783 (1982).

▪ Cause excusing default in this context is an objective factor, not fairly attributed to the Petitioner, *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991), where the factual or legal basis for a claim was not reasonably available to counsel at the time. *Id.* Ignorance of the prevailing law or inadvertent omission/mistake in failing to raise

certain claims on appeal does not constitute cause. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 478, 106 S.Ct. at 2645.

▪ One way to establish cause is to show that "a constitutional claim is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross,* 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984).[7] In *Reed,* the petitioner's failure to appeal a jury instruction was excused because at the time, there was no question as to the instruction's validity. It was not questioned until years later and was eventually struck down by the U.S. Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). The absolute lack of legal basis for the claim at the time constituted good cause for failing to raise the issue on appeal. In such a case, there is little concern that the federal habeas court would be unduly encroaching upon the state courts' interest in enforcing its procedural rules. *Dugger v. Adams,* 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989).

▪ Lambright makes this argument, again suggesting that *Strickland,* which was decided after Lambright's direct appeal, created the legal basis for his claim. *Strickland* did not contemplate such a result, and to the contrary, instructed that cases previously decided under differing standards need not be reconsidered in the light of *Strickland'*s changes. *Strickland v. Washington,* 466 U.S. 668, 696–97, 104 S.Ct. 2052, 2069–70, 80 L.Ed.2d 674 (1984). As explained above, the legal basis for a claim of ineffective assistance of counsel existed well before *Strickland* and well before Lambright's trial. The legal basis for Lambright's ineffectiveness claims was available and was well grounded in principle. This contention fails to estab-

---

7. *See also Deutscher v. Whitley,* 884 F.2d 1152, 1156 (9th Cir.1989) (determining that cause exists if novel claim had no reasonable basis in law at the time of the default), *vacated on other grounds,* 500 U.S. 901, 111 S.Ct. 1678, 114 L.Ed.2d 73 (1992).

lish cause for failing to raise the claim on direct appeal.

■ Lambright also contends that he did not raise ineffectiveness of counsel on appeal because it was impossible to do so. His claim could not be found within the record, but rather required an evidentiary hearing in order to bring forth the facts relevant to counsel's performance. The fact-finding process of an evidentiary hearing is not conventionally available on appeal. Lambright, correctly notes that direct appeal is limited to matters appearing in the trial court record. *Arizona v. Caldwell,* 117 Ariz. 464, 573 P.2d 864 (1977) (en banc). Therefore, Lambright concludes, it was practically impossible for him to have raised his ineffectiveness claim, as it depended on development of matters outside the record.

■ Lambright is wrong in his belief that it would have been practically impossible to raise the claim on direct appeal. As discussed above, the appellate courts were, during the relevant time period, routinely allowing ineffectiveness claims on appeal and returning the claims to the trial court for fact-finding if necessary. The Ninth Circuit has refused to apply a special standard to ineffectiveness claims, and requires that they be properly raised like all other claims in order to avoid default. "Wainright is equally applicable to ineffectiveness claims." *Carriger v. Lewis,* 971 F.2d 329, 334 (9th Cir.1992) (citing *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993)). Also, futility is insufficient to establish cause. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Arizona offered a procedure for Lambright to raise his claim, but he did not avail himself of that procedure.

■ Ineffectiveness of *appellate* counsel is cause for excusing procedural default. *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645–46. The Petitioner does not specifically argue that appellate counsel's performance is cause for his failure to raise the trial counsel ineffectiveness claim on appeal, but he does claim that appellate counsel's alleged numerous shortcomings are independent instances of ineffective assistance of counsel. This claim was also defaulted in the state court by Lambright's failure to raise the claim in his first two Rule 32 petitions. Before an ineffectiveness claim may be used to establish cause for a procedural default, the claim must be properly presented to the state court as an independent claim. *Murray,* 477 U.S. at 488–89, 106 S.Ct. at 2645–46. Lambright did not present the appellate counsel claim in the state court as required by Rule 32. Accordingly, that claim is procedurally barred and cannot be used to establish cause for the prior default of not raising the trial counsel claim on direct appeal.

■ Under Lambright's logic, he would be forced to claim ineffective assistance of collateral post-conviction relief counsel. After all, it was the Rule 32 counsel who failed to raise ineffective assistance of appellate counsel in either of the first two Rule 32 petitions. There is no right to counsel in Rule 32 proceedings, so there is no constitutional implication. *Pennsylvania v. Finley,* 481 U.S. 551, 556, 107 S.Ct. 1990, 1993–94, 95 L.Ed.2d 539 (1987) (denying right to counsel in state collateral proceedings after completion of direct review); *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (declaring no constitutional right to any attorney in state post-conviction proceedings, so attorney error in those proceedings cannot amount to ineffective assistance of counsel and therefore may not constitute cause); *Bonin v. Vasquez,* 999 F.2d 425, 429–30 (9th Cir.1993) (ruling that attorney error at post-conviction proceeding is not cause). Lambright has not demonstrated any cause for excusing his defaults.

■ While a court need not examine the existence of prejudice once the petitioner fails to establish cause, *Engle v. Isaac,* 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982); *Thomas v. Lewis,* 945 F.2d 1119, 1123 n. 10 (9th Cir.1991), the Court does so in this case in the interest of thorough consideration of Lambright's position and as an alternative or additional rea-

son for refusing to excuse Lambright's procedural default.[8]

To establish prejudice in order to excuse default, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982). But for the alleged error, the petitioner might not have been convicted. *Reed v. Ross*, 468 U.S. 1, 12, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984). This means that actual harm must have resulted from the alleged constitutional violation. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir.1991).

Lambright cannot make this showing because there is nothing to suggest that the outcome of the trial or sentencing would have been different but for the alleged errors of counsel. That is due to the overwhelming evidence of Lambright's guilt and of the especially cruel and heinous nature of his crimes.

At Lambright's sentencing, Judge Brown made detailed findings. He found that Lambright killed for gratification, in a way sure to terrorize the victim. He wrenched the knife around inside Ms. Owen after repeatedly stabbing her in the chest and abdomen. He twisted the knife deep into her body, to either cause more damage or more pain. Lambright cut her throat so deeply that the knife penetrated the vertebrae. When she tried hopelessly to raise herself up on one arm, Lambright smashed her in the head with a rock. He later said, "Did you see her head bounce when I hit it with that rock?" He deliberately took Ms. Owen to that desolate location to kill her and to avoid detection. Afterward, he celebrated with the others. This Court does not find cause or prejudice for Lambright's defaults.

For these same reasons, this Court's refusal to reach the merits does not result in a fundamental miscarriage of justice. This is not an extraordinary case where a constitutional violation has probably resulted in the conviction and death sentencing of an innocent person. Lambright has not made a colorable showing of actual innocence as required by *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) and *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Actual innocence with respect to the death penalty focuses on the factors which make a defendant eligible for a death sentence. It does not focus on additional mitigating evidence which was not introduced at trial. *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).[9] There is no cause, no prejudice, and no miscarriage of justice.

## II. TRIAL CLAIMS (Claims 1–10)

### A. Lesser Included Offenses Instruction (Claim 1)

Lambright argues that the jury should have been instructed on the lesser included offenses to first degree murder. Based upon his statements to law enforcement officers, Lambright believes that the jury could have, if properly instructed, concluded that Lambright's participation was not premeditated and that he was guilty of only a lesser crime

---

8. Lambright continues to argue that he needs funds to research the ineffectiveness claims, and that a showing a prejudice is dependent on his research. The Court again denies the request for funds and for an evidentiary hearing. Lambright has not satisfied the cause prong. A federal evidentiary hearing is not required unless the Petitioner can show "cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure," or that "a fundamental miscarriage of justice would result from failure to hold a federal evidentiary hearing." *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 11–12, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992). Without a showing of cause, this Court will not direct a hearing. *See Brown v. Easter*,

68 F.3d 1209, 1211 (9th Cir.1995) (district court's refusal to conduct an evidentiary hearing permissible in the absence of a showing of cause).

9. *See also Harris v. Vasquez*, 949 F.2d 1497, 1515–16 (9th Cir.1990) (new psychological evidence may not be sufficient to show actual innocence of offense or of death sentence), *cert. denied*, 503 U.S. 910, 112 S.Ct. 1275, 117 L.Ed.2d 501 (1992); *Clark v. Lewis*, 1 F.3d 814, 824–25 (9th Cir.1993) (newly discovered evidence may not be sufficient to show actual innocence of the death penalty).

of second degree murder, aggravated assault or simple assault.

The problem for Mr. Lambright is again procedural default. He did not raise this issue in the state court until his second Rule 32 petition filed on November 3, 1991, and amended on March 13, 1992. The Rule 32 court rejected this claim, going so far as to amend the order denying relief to make clear that the ruling was based upon preclusion. Judge Brown amended his prior ruling that relied upon a "death is different" concept to find the claim barred by state law, but yet required a consideration of the merits of the claim. The amended order of April 9, 1993 contains a clear and express statement that Judge Brown relied on Rule 32 to deny the claim. The consideration of the merits was an alternative rationale for denying the claim. *See* Order of Apr. 9, 1993 at 2 ("he has waived the right to assert this claim in this petition and the claim is precluded"). For all the reasons discussed above in Part I, the Petitioner has defaulted on this claim and has not demonstrated cause and prejudice to overcome the procedural default. This Court is precluded from considering the merits of the claim.

 Lambright urges this Court to consider his trial claims in light of the performance of his trial counsel. He stresses that the trial errors cannot be viewed in a vacuum, but must be tested with an eye toward the ineffectiveness claims. While the Court agrees that thorough review demands a consideration of all the circumstances and the entire record, this Court is prevented from considering the ineffectiveness claims. As explained above, before ineffectiveness may be used to establish cause for a procedural default, the ineffectiveness claim must be properly presented to the state court as an independent claim. Lambright's failure to do so precludes federal consideration of ineffectiveness as cause for the default of this trial claim. The claim that the trial court erred in failing to instruct the jury on lesser included offenses is precluded and must be denied.

Even if this claim were not precluded, it would be denied on the merits based upon *Hopper v. Evans,* 456 U.S. 605, 102 S.Ct.

2049, 72 L.Ed.2d 367 (1982) (no constitutional requirement to instruct upon lesser-included offenses not supported by the evidence) and *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (premeditation and felony murder are not separate offenses requiring separate verdicts). Trial claim 1 is precluded and is alternatively denied on the merits.

### B. Felony Murder Jury Instruction

In trial claim 2, Lambright posits that the trial court instructed the jury on felony murder in such a way that improperly characterized the burden of proof. That is, the State was relieved of its burden of proving the "in furtherance of" element of felony murder. This, says Lambright, is a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

This claim suffers the same infirmity as trial claim 1. This claim was found waived and barred by the Rule 32 court, and thus its merits may not be addressed by this Court. This claim too must be denied.

### C. Dual Juries (Claim 3)

 The trial court severed the cases of Smith and Lambright, upon defense request. It held a joint trial with separate juries for each defendant. Lambright argues in trial claim three that this dual jury procedure violated the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, he contends that Smith's defense strategy was to blame Lambright. Lambright's cross-examination of witnesses would always follow that of Smith, so Smith had the opportunity to blame Lambright first during cross-examination. Also, errors made during Smith's cross-examinations "rubbed off" onto Lambright. Further, the trial judge's warning to the jury that some evidence was admissible only against Smith must have introduced jury speculation each time they were removed from the courtroom. Lastly, Lambright argues that state law did not allow for dual juries. Violation of state law constitutes a violation of his federal constitutional right

to due process under the Fourteenth Amendment.

The State responds that while Lambright raised the issue of dual juries on direct appeal, he now raises new allegations in his amended petition that were not presented to the state court. On appeal the bases for the dual jury claim were that there was no separate defense table, that there was the possibility of impermissible jury speculation on inadmissible evidence presented to Smith's jury, and that the dual jury procedure was not provided by state law. For the first time, Lambright now presents as bases for the dual jury claim, the "rub off" from the cross-examinations and a due process requirement that a state comply with its own procedures. The Respondents characterize these new bases as sub-claims and argue that they are not exhausted because they have never been presented to any state court.

■ The Respondents are correct. The factual and legal basis for a claim must be presented to the state court so that the state has a reasonable opportunity to address the claim and correct any violation of federal rights. *Duncan v. Henry*, ——— U.S. ———, ———, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (per curiam); *Crotts v. Smith*, 73 F.3d 861, 865 (9th Cir.1996). Merely raising a claim without the pertinent supporting facts and law does not provide the state a fair opportunity to consider the claim. *See Keeney v. Tamayo–Reyes*, 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992) (state prisoner must show cause and prejudice for failing to raise same claims and to develop supporting facts in state court).[10]

■ While the use of one defense table for all defendants in a criminal trial may fall well within federal law, a subordinated cross-examination by one of the defendants may not. This Court does not so rule at this time, but only points out that claims are dependent upon their factual and legal background and are not sustained based upon broad headings or titles. Mr. Lambright did not present the operative facts to the state court which would have allowed the state court to apply controlling legal principles to the facts bearing on the claim. He has therefore not exhausted his claim that the cross-examination order and its effects violated his constitutional rights. He also has not exhausted his claim that the use of dual juries without such a state procedure constituted a violation of his rights of due process.

■ Notwithstanding Lambright's failure to properly exhaust these claims, this Court will treat them as technically exhausted. Too much time has been lost in this case. Lambright's previous failures in satisfying the exhaustion requirement have resulted in nearly nine years of delay. The State, the victims, the Petitioner, and the federal system is owed better. The Court will not allow Mr. Lambright to once again return to the state court in effort to exhaust this claim.

The President recently signed into law Title I, Habeas Corpus Reform, as part of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (1996). Section 104 of Title I amends 28 U.S.C. § 2254, allowing a federal habeas court to deny a writ of habeas corpus on the merits, despite failure to exhaust available state remedies. 110 Stat. 1214, 1218. This power to *deny* a claim appears consistent with a respect for the states' role in remedying federal violations. Title I does not confer the power to *grant* a writ in the absence of exhaustion. This leaves intact the state's ability to correct constitutional violations in the first instance. The federal courts will not grant a writ without state consideration of the federal claim. Ostensibly, Title I authorizes the actions of this Court today in moving beyond Lambright's failure to exhaust his state remedies.

---

10. To exhaust a federal claim, a petitioner should make essentially the same arguments before the state and federal courts. *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir.1980). Raising one specific claim under a heading, such as ineffective assistance of counsel, does not exhaust other specific claims with that same title. *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir.1992), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993). A claim may be considered unexhausted where new facts are alleged that were not presented to the state courts. *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir.1994).

While the Court takes this step with the awareness of Title I, it does not do so upon sole reliance of Title I. The applicability and implications of this new law are far from clear at this point. Rather, this Court additionally bases its decision to excuse the failure to exhaust on *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) and its progeny. *Coleman*'s first footnote explains:

> This rule [of requiring an express statement of state reliance on independent, adequate state law grounds] does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred. In such a case there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims.

*Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. at 2557 n. 1.[11]

What this means to Lambright is that if this Court were to require proper exhaustion, he would return once again to the state court for consideration of this claim. The state court would find him procedurally barred from relief due to Rule 32.2. This is because he did not raise the bases for the claim on direct appeal. Further, he did not raise the claim at all in his previous collateral proceedings petitions. It would therefore cause unnecessary further delay without benefit. The state court would not reach the merits of the claim, so Lambright has both technically exhausted and procedurally defaulted the claim.

 So, while lack of proper exhaustion does not prevent federal consideration, procedural default does. Because the state court would determine, should Lambright return there with this claim, that he has procedurally defaulted under Rule 32, he has in fact, in this Court, defaulted the claim based upon cross-examination and state law violation as a due process violation. The cause

suggested for this default is again, trial counsel's alleged incompetency. As stated above, ineffectiveness of counsel cannot establish cause where the ineffectiveness claim has not been presented to the state court as an independent claim. *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). The Petitioner has failed to establish cause and prejudice to overcome the procedural default and as such, the claim must be denied.

What remains then is the aspect of trial claim 3 which contends that jurors were impermissibly allowed to speculate upon evidence that was presented to Smith's jury. The Arizona Supreme Court criticized Judge's Brown use of two juries, concluding that the use of dual juries was the creation of a local rule not explicitly authorized by the state rules of criminal procedure. This exceeded the trial court's discretion, but did not result in any actual prejudice to Mr. Lambright. Although the practice was condemned as an unauthorized procedure, it was not condemned as violative of the United States Constitution and was not reversible error in Lambright's case. *Arizona v. Lambright*, 138 Ariz. 63, 673 P.2d 1, 8 (1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984).

The state supreme court revisited this issue in *Hedlund v. Sheldon*, 173 Ariz. 143, 840 P.2d 1008, 1011 (1992) (en banc). Overruling *Lambright*, the court determined that the decision to utilize two juries "is not a rule at all." Rather, it is " 'the exercise of an individual judge's discretion to use a particular technique in order to meet a specific problem' in a single case." *Hedlund*, 173 Ariz. at 147, 840 P.2d at 1011 (quoting *Lambright*, 138 Ariz. at 71, 673 P.2d at 16 (Feldman, J., specially concurring)). A trial judge may employ innovative techniques, while being sensitive to the unique difficulties of a capital case. *Id.*

The Ninth Circuit agrees that capital cases can present special problems. In *Beam v. Paskett*, 3 F.3d 1301, 1304 (9th Cir.1993),

---

11. *See also Harmon v. Ryan*, 959 F.2d 1457, 1460 (9th Cir.1992) (a state prisoner can meet the exhaustion requirement by showing that no state remedies remain available); *Acosta–Huerta v. Es-* *telle*, 7 F.3d 139, 142 (9th Cir.1993) (federal habeas court may consider unexhausted claims that do not rise to the level of constitutional violations).

*cert. denied sub nom., Arave v. Beam,* —— U.S. ——, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994), the court held that, in a non-capital case, the use of dual juries does not constitute a per se violation of the defendant's rights under the Fifth, Sixth and Fourteenth Amendments. It did not however, determine whether this would hold true in a capital case. Since it vacated Beam's death sentence on other grounds, the court did not decide whether the use of dual juries in a case where death was imposed would be unconstitutional. *Id.* at 1303. The court did, nonetheless, note that capital cases require "exacting constitutional scrutiny" because a life will be taken. *Id.* at 1304. The Ninth Circuit recognized:

> The dual jury procedure introduces additional complexity and likelihood of error into the trial and thereby impairs a defendant's ability to conduct his defense. For this reason, a dual jury verdict is inherently more dubious than an ordinary verdict— even in the absence of a showing of specific prejudice.

*Id.* Mr. Lambright cites to this passage, arguing that *Beam* instructs that there is no need for actual prejudice when a defendant receives the death penalty. A capital case, with its unique problems, and unlike a case where death is not imposed, does not require a showing that the verdict was unreliable. Because a dual jury verdict is inherently more dubious, it is inherently prejudicial. This Court disagrees.

What *Beam* teaches is that a death penalty case is different, not in its procedures, but in the severity of the punishment. Because the ultimate penalty will be imposed, the trial court must be particularly vigilant in ensuring that the penalty will not be imposed in the absence of a reliable verdict of guilt. *Beam* continued:

> The degree of unreliability is not dependent, however, upon whether the trial is a capital one or not. Cf. Beck v. Alabama, 447 U.S. 625, 642–43, 100 S.Ct. 2382, 2393, 65 L.Ed.2d 392 (1980) (stating that jury verdicts following a failure to give a lesser included offense instruction are inherently more suspect in capital than non-capital trials). Whatever additional constitutional

constraints exist on the uses of dual juries in capital trials would be a consequence of the greater reliability demanded of verdicts upon which a sentence of death is based, and not upon any additional uncertainty created by the fact that the trial is capital in nature.

*Id.* Death is different. *Beck v. Alabama,* 447 U.S. 625, 637, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980). "There is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment." *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976). It therefore appears then, that although a dual jury *may* produce a more suspect verdict, if the verdict is reliable, there is no constitutional violation— whether or not the case is a capital one.

No court has held that multiple jury empanelment in a capital case is inherently prejudicial. The federal appellate courts having considered dual juries were reviewing non-capital cases, and all have approved the practice. In the absence of actual prejudice, the courts considering this issue agree that in a non-capital case, dual juries do not offend the Constitution. *See, e.g., United States v. Sidman,* 470 F.2d 1158 (9th Cir. 1972) (upholding the multiple jury procedure where the trial judge carefully instructed the panels), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973); *United States v. Hayes,* 676 F.2d 1359, 1367 (11th Cir.) (concurring with *Sidman* and affirming convictions due to lack of prejudice flowing from multiple juries), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1982); *Byrne v. Matczak,* 254 F.2d 525, 529 (3d Cir.) (ruling novel use of multiple juries not unconstitutional without particularized harm), *cert. denied,* 358 U.S. 816, 79 S.Ct. 24, 3 L.Ed.2d 58 (1958); *United States v. Crane,* 499 F.2d 1385 (6th Cir.) (upholding multiple jury procedure as constitutional in the absence of specific prejudice), *cert. denied,* 419 U.S. 1002, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974); *United States v. Rowan,* 518 F.2d 685, 690 (6th Cir.) (requiring showing of substantial prejudice to overrule trial court's discretion), *cert. denied sub nom. Jackson v. United States,* 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d

284 (1975); *United States v. Rimar,* 558 F.2d 1271, 1272 (6th Cir.) (finding confusion resulting from dual juries not so pervasive as to render the trial unfair), *cert. denied sub nom. Barber v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *United States v. Lebron–Gonzalez,* 816 F.2d 823, 830–31 (1st Cir.) (finding no abuse of discretion in having two juries in the absence of a strong showing of prejudice), *cert. denied,* 484 U.S. 843, 108 S.Ct. 135, 98 L.Ed.2d 92 *and cert. denied sub nom. Fonfrias v. United States,* 484 U.S. 857, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987).

 Today this Court takes the next logical step, and holds that actual prejudice is required in capital cases, just as it is required in non-capital cases. A constitutional violation occurs only where a criminal defendant demonstrates particularized harm from the use of multiple juries. Death is indeed different in the reliability needed, but not in the procedures employed to serve the ends of justice.

 Lambright has not demonstrated that the verdict finding him guilty was unreliable. He merely conjectures that there was a "possibility" that jurors could "speculate" on evidence they did not hear. Because the judge cautioned both juries that some evidence was admissible only against Smith, Lambright concludes that his jury must have impermissibly speculated on the evidence presented against Smith outside their presence. He complains about the potential prejudicial "rub-off" but does not cite any instances showing such actual prejudice. Such a generalized allegation is insufficient.

Additionally, the Court's own efforts of searching the record in conduct of "exacting constitutional scrutiny," reveals no circumstances that call in to doubt the jury's verdict. The trial judge carefully explained the roles of the two juries and instructed them accordingly. He excused Lambright's jury during Smith's opening statements and closing arguments and instructed the juries separately. The court excused Lambright's jury during the testimony concerning Smith's confession and ensured that the juries deliberated separately. His explanation of this process to the juries was designed to alleviate

confusion or prevent speculation. In sum, he carefully protected Mr. Lambright's right to a fair trial, while preserving judicial resources.

As discussed above, there was overwhelming evidence of Mr. Lambright's guilt and of the cruel and heinous nature of his crimes. The detailed testimony of his conspiring lover and his own incriminating statements belie any suggestion of innocence. The verdict was supported by the evidence and can be relied upon to know that Lambright murdered Sandra Owen. As Lambright suffered no actual prejudice from the use of dual juries, trial claim three fails on the merits.

**D. Limited Recross–Examination (Claim 4).**

In trial claim 4 Lambright submits that the trial court improperly restricted his cross-examination of Kathy Foreman, in violation of the Sixth and Fourteenth Amendments. The State responds that this too, is precluded from federal review due to unexcused procedural default. The State is correct.

Lambright simply reasserts the same reasons for avoiding default that the Court has addressed above. The state court found the claim precluded because it was not raised on direct appeal. The only cause put forth is ineffectiveness of trial counsel, which may constitute cause only where the issue was raised independently in the state court. Lambright did not raise ineffectiveness on direct appeal as an independent claim. Trial claim 4 is precluded from federal review.

**E. County Attorney as Witness (Claim 5)**

Lambright contends in trial claim 5, that his Sixth and Fourteenth Amendment rights were violated by the trial court's allowance of testimony by Paul Banales, a county attorney. The trial court overruled Lambright's objection, and allowed Banales to testify about the immunity agreement he entered into with Kathy Foreman. It was Banales who decided to offer immunity to Foreman. He was actively involved in the investigation and the subsequent preliminary hearing. Af-

ter the defendants called Foreman's credibility into question, the State called Banales. He testified that Foreman's story had not changed during the course of the investigation through the time she entered into the immunity agreement. Lambright contends that Banales was a prosecutor and therefore should not have been a witness. This, argues Lambright, denied him the right to a fair trial.

Lambright did raise this issue on direct appeal, but did not present it as a federal issue as required by *Duncan* and *Keeney*.[12] He did not alert the state court to the fact that he was asserting a claim under the United States Constitution. He first raised it as a federal issue in the second Rule 32 proceeding, where the state court held that it was precluded under Rule 32.2(a). He had defaulted on the claim by failing to raise it in the earlier Rule 32 proceeding. As such, Lambright has procedurally defaulted on trial claim 5 and presents no grounds sufficient to excuse this default.

### F. Proposed Jury Instruction (Claim 6)

Trial claim 6 involves a requested jury instruction which was denied by the trial court. Smith and Lambright sought an instruction (# 10) stating:

There are two defendants. You must consider the evidence in the case as a whole. However, you must consider the charge against each defendant separately.

You must not be prejudiced against one defendant because you determine that the State has proved it's case against another defendant.

In refusing this instruction, Judge Brown explained that the two cases had been severed, so the proposed instruction was not applicable. Each jury was considering the evidence admitted only as to its respective defendant. He did instruct the jury on accomplice liability, and found that the accomplice instruction addressed the concerns raised.

Lambright maintains that this refusal is violative of the Sixth and Fourteenth Amendments because it created a danger of Lambright's jury finding him guilty based upon Smith's conduct. The State once again responds with the doctrine of procedural default.

This claim, while presented on direct appeal, was not presented as a federal issue as required by *Duncan* and *Keeney*. It is therefore precluded due to Lambright's unexcused procedural default. Further, for the reasons explained above regarding the constitutionality of dual juries, this claim lacks merit. Trial claim 6 is precluded and alternatively denied on the merits.

### G. Death Qualified Jury (Claim 7)

Lambright argues in trial claim 7 that the death qualification of his jury denied his right to a fair trial and impartial jury. It is improper, Lambright asserts, for Arizona to exclude jurors who express reservations about capital punishment. This is because in Arizona, the jury determines only guilt—not the sentence. Hence, there is no need to death scruple a jury. Lambright complains that one venireperson was excused due to that person's objections to the death penalty.

This claim is precluded from federal review because Lambright procedurally defaulted the claim in state court. When he finally raised the issue in his second Rule 32 petition, the state court deemed it precluded under Rule 32.2(a)(3) due to the failure to raise it either on direct appeal or in the first Rule 32 petition. He presents no grounds sufficient to excuse the default.

■■■■ Trial claim 7 also fails on the merits. The trial court, the state, and the accused should attempt to identify and dismiss those prospective jurors who will not be fair to either party. People with fundamental opposition to the death penalty may not be fair to the State and may properly be excluded from the guilt phase. *Lockhart v. McCree*, 476 U.S. 162, 170 n. 7, 172, 106 S.Ct. 1758, 1763 n. 7, 1764, 90 L.Ed.2d 137 (1986);

---

**12.** *See also Granberry v. Greer,* 481 U.S. 129, 136, 107 S.Ct. 1671, 1676, 95 L.Ed.2d 119 (1987) (state prisoner must apprise the state court of the legal theory and the facts upon which he bases his claim).

*Morgan v. Illinois,* 504 U.S. 719, 732–33, 112 S.Ct. 2222, 2231–32, 119 L.Ed.2d 492 (1992); *Arizona v. LaGrand,* 153 Ariz. 21, 33, 734 P.2d 563, 575, *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987); *Arizona v. Fisher,* 141 Ariz. 227, 249, 686 P.2d 750, 772 (Ariz.), *cert. denied,* 469 U.S. 1066 (1984). Furthermore, the trial court's decision to excuse a juror because of death penalty attitudes is a finding of fact subject to a presumption of correctness. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). There is no argument or indication in the record that this presumption should be overcome. Trial claim 7 is precluded, and alternatively, denied on the merits.

## H. Inculpatory Statements (Claim 8)

Lambright next asserts that his statements made after his arrest were involuntary and should not have been admitted against him at trial. This issue was presented to the state supreme court and is appropriate for federal review on the merits.

Four officers were involved in the arrest of Lambright at his place of employment. One officer who was positioned about a quarter mile away at a grocery store, called the auto sale shop where Lambright was working, in order to detain him on the phone. Meanwhile, three other officers arrived at the auto shop to arrest him. The arresting officers did not display any guns during the arrest. One officer explained to Lambright his *"Miranda* rights," and another handcuffed him and placed him in the back of an unmarked police car. The group left the auto sales store with Lambright handcuffed in the back seat, along side one of the officers. They proceeded to the grocery store to pick up the fourth officer and then went to a restaurant where an officer's car had been left before the arrest. From there, Lambright and the four officers drove to the Orange County jail.

At the voluntariness hearing, Lambright testified that during the car ride, an officer in the back seat with him had a gun displayed on his lap, with the muzzle pointed toward Lambright. He stated that the officer commented on how that gun "can put big holes in a person." (R.T. at 421). The three officers in the car, refuted Lambright's testimony, all claiming that they saw no gun displayed during the car ride.

Lambright said that during the booking process, he was allowed two phone calls. He testified that, in the presence of officers, he called his sister and his boss, asking both to arrange for an attorney to come there immediately. The officers testified that they could not specifically recall the phone calls and never heard Lambright mention a lawyer.

According to Lambright's voluntariness hearing testimony, after going through the booking process, one of the officers asked Lambright if he wanted to talk about the case and motioned for Lambright to come towards him into a room. The officer said that he had a statement from Kathy Foreman and Lambright said he would talk to him. Lambright testified that as they began to talk, the officer asked if Lambright had an attorney. Lambright responded that he had one coming, but the officer again asked if Lambright would talk with him. Although Lambright did not refuse to answer the officer's questions, he said that he thought he should talk to his attorney. The officer's testimony differed sharply, in that he denied hearing Lambright mention a lawyer.

Lambright further testified that he had been arrested before and knew that he had the right to have an attorney present and to not make statements to the police. He did not tell the officers that he would not talk to them and he was apprised of his rights. The officer continued to ask questions. The officer, who was a foot taller and probably a hundred pounds larger than Lambright, said that Foreman had given a statement and had tried unsuccessfully to help locate Owen's body. Lambright talked to the officer and made inculpatory statements about what happened in Arizona. He drew pictures of Foreman's knife and sketched a map of the area.

Lambright said that following this, the officer told him about a local case where a defendant avoided prison by helping the police locate a codefendant. The defendant who spoke first, got a favorable deal. If Lambright helped them find the body, he

would "probably get treated a lot lighter." (R.T. at 430). All the testifying officers contradicted Lambright's testimony regarding such a case. One officer did admit knowing of such a case, but said that it was not mentioned on that day.

During the time he was in the interview room, Lambright testified, four or five officers came in at different times. Four of them questioned him at different times throughout the morning. He was not in handcuffs and was given cigarettes, but was not allowed to leave the small room. The officers were seeking Lambright's waiver of extradition. Lambright said that he was told that "if I fought it, it would go harder on me because they would have to—to go through the process of getting the governor's warrant and come get me." (R.T. at 423). He was provided a pre-printed form, so that he might write out a statement. An officer read to him the language at the top of the form, which again explained his rights to silence and to an attorney. He indicated that he understood and signed that he was making a knowing, voluntary waiver of those rights.

As Lambright began to write out the statement, he was informed that a judge had arrived. It was about 12:10 p.m., roughly two and a half hours after his arrest. The judge read to Lambright the statute regarding extradition. When Lambright asked the judge a question about extradition, the judge explained that he was not there to give legal advice as an attorney. The judge suggested that Lambright should have an attorney and said that he would appoint one. The judge got a lawyer on the phone, with whom Lambright spoke. The lawyer told him to say nothing further. Lambright told the officers that his lawyer had instructed him not to say anything and not to sign anything. Lambright was placed in a cell, isolated from other prisoners. He claimed that he was not allowed visitors, cigarettes or reading material.

Lambright testified that about six or seven hours later that afternoon, two of the officers came to his cell and initiated a conversation with Lambright. They asked if he had anything to say about the case and if he was going to sign the extradition papers. Lambright said no, he did not want to say anything more.

During his stay at the Orange County jail, Lambright said that officers came to his cell three more times. Again, they attempted to talk with Lambright. On one of those visits to the cell, according to Lambright, one of the officers hit the wall and said that Lambright was wrong for trying to protect someone, that Lambright was harming himself and doing an injustice. Lambright did not say anything.

A few days later, a Pima County Sheriff's Department detective came to escort Lambright to Tucson. The detective told Lambright that he would not talk to him about the case because Lambright was represented by counsel. Despite the detective's unwillingness to talk to Lambright, Lambright did make inculpatory statements.

The trial court found that Lambright's statements made at the Orange County jail before the judge arrived were made voluntarily, without coercion, promise of benefit, force or duress. The statements made after the judge's 12:10 p.m. arrival however, were suppressed. The statements made to the detective on the trip to and upon arrival in Arizona were allowed.

Lambright argues that the judge erred in finding that the statements were voluntary. The officer's knowledge of a local case where a defendant was given easier treatment, Lambright contends, makes clear that Lambright's version of events was not fabricated. He claims that pointing the gun in the car and offering lighter treatment constitutes coercion that overcame Lambright's free will. He also argues that his right to counsel was violated by the officers' continued questioning after he had made calls to find an attorney. And finally, Lambright asserts that the statements made to the detective enroute to Arizona were the product of earlier misconduct. This Court does not agree.

 It is apparent to this Court that Judge Brown resolved the conflicting testimony of Lambright and the officers in favor of the officers. In a federal habeas proceeding, state findings of fact that involve contradictory testimony are conclusive "if fairly

supported by the record." *Miller v. Fenton,* 474 U.S. 104, 117, 106 S.Ct. 445, 453, 88 L.Ed.2d 405 (1985); *Wright v. West,* 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 2792–93, 61 L.Ed.2d 560 (1979); *McMillan v. Gomez,* 19 F.3d 465, 469 (9th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 170, 130 L.Ed.2d 107 (1994). Essentially, Judge Brown had to determine who was lying. He had the advantage that this Court lacks in that he observed the demeanor in order to evaluate the credibility of all the witnesses at the voluntariness hearing. When making credibility determinations, a cold record transcript is no substitute for first-hand observation. A federal habeas court cannot substitute its judgment for that of the state court on the credibility of witnesses who appeared before the state court. *Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

■■■■■ This Court affords great weight to the conclusions of the coequal state judiciary. *Miller v. Fenton,* 474 U.S. 104, 112, 106 S.Ct. 445, 450–51, 88 L.Ed.2d 405 (1985); *Greenawalt v. Ricketts,* 943 F.2d 1020, 1027 (9th Cir.1991), *cert. denied,* 506 U.S. 888, 113 S.Ct. 252, 121 L.Ed.2d 184 (1992). Historical or subsidiary facts pertaining to the voluntariness of a confession is entitled to the presumption of correctness. *Miller,* 474 U.S. at 112, 106 S.Ct. at 450–51; *Collazo v. Estelle,* 940 F.2d 411, 415 (9th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 870, 116 L.Ed.2d 776 (1992).

■■■■ This Court determines that not only are Judge Brown's findings supported by the record, his conclusions are also correct. Four different witnesses, from three different law enforcement agencies, testified consistently. All denied the display of a weapon in the car and all denied saying or hearing anything that day about a case where the first confessing defendant was given a light sentence.

This Court does not find it significant that one of the officers did admit that such a case had occurred in that area and that he knew about it. Lambright could have heard of the case in a variety of ways or could have guessed such a case would have existed due to his vagueness in describing the facts surrounding the case. In any event, Judge Brown considered the live testimony of four officers whose versions were independently consistent, even though they were with Lambright at differing times. Two of these witnesses were from Orange County, one was from the Texas Department of Public Safety, and the last was from the Louisiana State Police. There is nothing in the record to corroborate Lambright's allegation that an officer pointed a gun at him during the car ride to the police station. Its self-serving nature is obvious.

This is not intended to suggest that numerosity necessarily equals veracity. Rather it is respect for the trial court's findings due to the unique position of live observation. This Court declines the invitation to second guess the trial court's resolution of conflicting testimony because the findings are reasonable and are supported by the record. The trial court's findings that the statements made prior to 12:10 p.m. were voluntary comports with the United States Constitution.

■■■■ There was also no constitutional violation in the officer's attempts to question Lambright after he purportedly called his sister and boss to try to obtain a lawyer. This too, was refuted by the other officers. All testified that they did not hear Lambright ask anyone about a lawyer. Again, the trial court's findings are supported and reasonable. Furthermore, even if it is true that Lambright made two calls in the presence of officers in which he asked for a lawyer, this is not tantamount to an unequivocal request for counsel. Lambright did not testify that any of the officers overheard his telephone conversations. Although he testified that he knew he had the right to not answer questions and to have a lawyer present, he nonetheless openly made damaging statements.

Finally, because there was no prior misconduct, Lambright's spontaneous statement to the detective enroute to and upon arrival in Tucson could not have been the product of previous misconduct. As with his statements in Orange County, there is sufficient evidence to support the conclusion that they

were freely, knowingly made. Trial claim 8 is denied on the merits.

### I. Possibility of Non–Unanimous Verdict (Claim 9)

Lambright complains in trial claim 9 that the form of the verdict made it impossible to determine whether or not the jury's decision was unanimous. The judge instructed the jury on premeditated murder and felony murder. But the verdict form only indicated that Lambright was guilty of murder in the first degree.

The Rule 32 court found this claim precluded due to Lambright's failure to raise it on direct appeal. It is, therefore also precluded from federal review. The Petitioner has not demonstrated cause and prejudice to excuse the procedural default. Additionally, this claim is meritless in light of *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (no separate verdicts required for felony murder and probation). Trial claim 9 is precluded and is alternatively denied on the merits.

### J. Voir Dire Questions as Part of the Record (Claim 10)

The trial court utilized a juror questionnaire, designed to reveal any potential juror bias in a case where the death penalty could be imposed. Judge Brown showed the questionnaire to the attorneys and allowed them to comment upon it. They were afforded the opportunity to recommend additional questions. The court distributed the questionnaire to the entire jury pool and asked them to complete it in the courtroom. The forms were collected from the pool and again made available to the attorneys. Judge Brown referred to the questionnaire during voir dire. In instances where jurors had expressed a strong opinion about the death penalty, the judge questioned them further. Both defendants affirmatively stated no objection to the use of the forms and neither requested that they be made part of the record. Yet now, Lambright complains that failure to include the forms in the record denied him meaningful appellate review.

Once again, the Petitioner has procedurally defaulted on the claim. The Rule 32 court

ruled the claim waived and barred for failure to object or raise on direct appeal. As such, his unexcused procedural default precludes federal review. Moreover, Lambright has never requested the record be supplemented to include the forms. Trial claim 10 is denied.

### III. SENTENCING CLAIMS (Claims 1–16)

#### A. Preclusion of the Death Penalty When There is Only One Aggravating Factor (Claim 1)

Lambright's first sentencing claim submits that where there is only one aggravating factor and significant mitigating evidence, life must be imposed over death. He cites *Arizona v. Rockwell,* 161 Ariz. 5, 775 P.2d 1069 (1989) (en banc) and *Arizona v. Marlow,* 163 Ariz. 65, 786 P.2d 395 (1989) (en banc), which reemphasized that where doubt exists, the death penalty should not be imposed. If there is significant mitigating evidence and little aggravating evidence, there is doubt.

The State responds that the claim is precluded because it was not raised until the second Rule 32 proceeding. The Rule 32 court rejected the claim but did not expressly state that it relied on state law in denying the claim. The supreme court denied review. Lambright has, therefore fairly presented this claim to the State's highest court.

The State also contends that *Rockwell* and *Marlow* are not applicable under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because they involve new rules announced after Lambright's conviction became final. The Court disagrees with the State but also disagrees with Lambright. These cases neither involve new rules, nor institute a per se life sentence where there is only one aggravating factor.

*Rockwell* and *Marlow* do not represent new constitutional rules under *Teague* because they restate the Arizona Supreme Court's determination to comply with federal constitutional precedent mandating that arbitrary death sentence risks be minimized. *See Saffle v. Parks,* 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (indicating that

a case in which the result was dictated by existing precedent does not announce a new rule).[13] More importantly, those two cases do not command reversal of death sentences where there is one aggravating factor and more than one piece of mitigating evidence. They simply reaffirm the importance of weighing aggravating factors and mitigating factors in an individual case to reduce the chance of arbitrary or capricious sentencing. *See Goeke v. Branch,* —— U.S. ——, ——, 115 S.Ct. 1275, 1277, 131 L.Ed.2d 152 (1995) (reiterating that a case announces a new rule if the result was not dictated by existing precedent at the time the conviction becomes final). As such, even if *Rockwell* and *Marlow,* did create a new rule, which this Court does not see, the supposed new rule is not the one that the Petitioner seeks to apply.

In *Rockwell,* the Arizona Supreme Court independently weighed the evidence and reduced a death sentence to life imprisonment. The court was faced with one statutory aggravating factor and "significant mitigating evidence." 161 Ariz. at 16, 775 P.2d at 1080. It discussed several circumstances that when weighed against the one aggravating factor, showed that death should not be imposed. Rockwell presented mitigating evidence regarding his age, alcohol abuse, physical disability that affected him psychologically, and his destructively competitive relationship with his brother. Balancing all this mitigating evidence against the one aggravating factor, the court found doubt. When there is doubt, it must be resolved in favor of life.

What the state supreme court was doing, is what it has long done, independently weighing the relevant factors.[14] It did not establish or even discuss a per se rule when only one aggravating factor was proven. It continued to perform an individual balancing of the proven factors.

*Marlow* also involved "substantial" mitigating evidence not considered by the trial court. The doubt that *Rockwell* and *Marlow* addressed was where a single aggravating circumstance was countered by significant mitigating evidence.

■ There is no doubt in the present case because there is no "substantial" or "significant" mitigating evidence. Lambright and his accomplices took this young, emotionally unstable woman to a desolate, far away place. She had been sexually assaulted on the way and asked her captors if they would let her go. She was trembling and tried to calm her nerves. She was sexually assaulted again after they took her to the remote mountainous area. Lambright twisted and wrenched the knife around inside her. He stabbed her multiple times and attempted to sever her neck. As she struggled helplessly to raise up on one elbow, Lambright came back and bashed her in the head with a rock, saying "Die, bitch." He took her jewelry and then listened to "We are the Champions" as they drove away, leaving Owen dead. He even wore her necklace for a year after the murder, as a "memento" of the trip. Without doubt, this establishes that the killing was committed in an "especially heinous, cruel, or depraved manner" as set forth in A.R.S. § 13–703(F)(6).

Lambright presented his lack of violent criminal history, honorable military discharge, alleged unsettled childhood and the immunity given Foreman. The supreme court independently reviewed all the mitigating evidence and balanced it against the established heinous and depraved aggravating factor. It exercised its independent judgment and looked at the evidence separately, just as it did in *Rockwell, Marlow* and countless other cases. The court has repeatedly found that the death penalty was an appropriate sentence where heinous cruel or de-

---

**13.** The Tenth Circuit has ruled that a challenge to the definition of especially heinous aggravating factor did not involve creation of a new rule. *Davis v. Maynard,* 911 F.2d 415, 416–18 (10th Cir.1990).

**14.** *See Arizona v. Milke,* 177 Ariz. 118, 128, 865 P.2d 779, 789 (1993) (en banc) (Arizona Supreme Court has responsibility of independently reviewing aggravating and mitigating circum-

stances to determine whether the death penalty was properly imposed), *cert. denied,* —— U.S. ——, 114 S.Ct. 2726, 129 L.Ed.2d 849 (1994); *Arizona v. Watson,* 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981) (en banc) (death penalty cases require the supreme court's separate and independent judgment in deciding whether or not death appropriately imposed).

praved manner was the only aggravating factor established. *See, e.g., Jeffers; State v. Knapp,* 114 Ariz. 531, 562 P.2d 704 (1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). This Court agrees with the supreme court that Lambright's evidence of mitigation is not "sufficiently substantial to outweigh the aggravating circumstance and to call for leniency." Sentencing claim 1 is denied on the merits.

### B. The Application of A.R.S. § 13–703(F)(6) (Claim 2)

■■■ Lambright asserts in sentencing claim 2 that the supreme court has failed to adhere to a single limiting construction of the especially heinous, cruel and depraved manner factor. The thrust of Lambright's claim is that § 13–703(F)(6) is vague and the court has failed to cure the vagueness by providing adequate guidance to the sentencer. This, says Lambright, violates the Eighth and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court considered this argument in *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), and determined that A.R.S. § 13–703(F)(6) does not violate the Eighth and Fourteenth Amendments. Specifically, the Court held that while the statutory factor is facially vague, the state supreme court had provided guidance to the sentencer. "[W]e find that its construction meets constitutional requirements." *Id.* at 654, 110 S.Ct. at 3057. *See also Arizona v. West,* 176 Ariz. 432, 454, 862 P.2d 192, 214 (1993) (en banc) (Arizona has adequately guided the discretion of the sentencer), *cert. denied,* —— U.S. ——, 114 S.Ct. 1635, 128 L.Ed.2d 358 (1994).

This would seem to end the matter. However, Lambright protests that the state supreme court should be required to list the factors necessary for an (F)(6) finding. He argues that the supreme court did set out factors in *Arizona v. Gretzler,* 135 Ariz. 42, 51, 659 P.2d 1, 10 (en banc), *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), but did not limit the sentencing court to those enumerated factors. Rather, Lambright cites several cases to assert that the

court continues to recognize more factors to support an (F)(6) finding.

Lambright's argument is not persuasive. These cited cases were decided prior to *Walton.* The United States Supreme Court had the benefit of those cases in reaching its decision that § 13–703(F)(6) is constitutional.

This case contains the factors discussed in *Gretzler.* First, Lambright relished in the killing. He twisted the knife around inside Sandy and even later commented on how her head bounced when he smashed the rock into it. He celebrated afterward in the car with Foreman and Smith. Further, he was still wearing Sandy's jewelry when he was arrested.

Second, he inflicted gratuitous violence upon Ms. Owen. After Lambright repeatedly stabbed her and tried to cut through her neck, and after Smith attempted to break her neck, Lambright bashed the dying girl in the head with a rock. At this time she was conscious and in obvious great pain. She was struggling to get up. Third, the crime was also senseless. The kidnapping and rape were serious enough, but the three could have left her alive.

Finally, Owen was certainly a helpless victim. Her perpetrators knew that she had just been released from a mental health treatment program and was on medication. She was a young woman trapped in a car with three people who could no doubt overpower her. She was taken to a remote area a distance away from the freeway. There was no one to come to her rescue. She had already been assaulted in the car and expressed fears about her fate. She was rendered even more helpless once Smith began to choke her. She fell to the ground, at which point she found herself being stabbed in the chest. Alone and injured, she tried to lift herself up on one arm. She could not have been more vulnerable.

■■■■ The application of the factor and the construction given the factor comport with *Gretzler* and *Walton.* Arizona's construction of "especially heinous" factor is constitutional. *Lewis v. Jeffers,* 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Further, while a federal court may consider

state court formulations of a limiting construction, it may not review state court cases to determine whether a limiting construction has been applied consistently. *Arave v. Creech*, 507 U.S. 463, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993).[15] The task for the federal court is to determine whether the state's reliance on the aggravating factor is so arbitrary and capricious as to constitute an independent due process or Eighth Amendment violation. *Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 536, 121 L.Ed.2d 411 (1992). Evidence supporting the finding of an aggravating circumstance is sufficient if, viewing the evidence in the light most favorable to the state, any rational trier of fact could find guilt beyond a reasonable doubt. *Jeffries v. Blodgett*, 5 F.3d 1180, 1193 (9th Cir.1993), *cert. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

There is sufficient evidence to support a finding that the killing was committed in a heinous, cruel and depraved manner. There is no basis for Lambright's claim that the state supreme court did not adopt and apply a sufficiently narrowed construction of the factor. Sentencing claim 2 is denied on the merits.

## C. Consideration of Proffered Mitigating Evidence (Claim 3)

In claim 3, Lambright asserts that Judge Brown failed to individually and cumulatively weigh all the mitigating evidence proffered. Lambright points out that the sentencer rejected the lack of prior violent criminal record. Instead of considering this in mitigation, the judge commented that his lack of a record was more likely the result of not being caught. He did not even mention certain other mitigating factors presented and failed to give cumulative weight to mitigating

factors. This, Lambright claims, violates the Eighth and Fourteenth Amendments.

■ Determining a death sentence demands individualized consideration of mitigating circumstances. All relevant mitigating evidence must be admitted and considered by the sentencer. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). A federal habeas petitioner is entitled to relief if the federal court can discern from the record that all mitigating evidence was not considered. *Parker v. Dugger*, 498 U.S. 308, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

■ Any error at the trial court was cured on direct appeal. The Arizona Supreme Court conducted an independent review of the aggravating and mitigating factors and determined for itself that a death sentence was appropriate. The court specifically stated that it considered "all the mitigation by the defendant" and found that it did not "outweigh the aggravating circumstance and to call for leniency." *Lambright*, 138 Ariz. at 69, 673 P.2d at 14.

■ A court's statement that it did consider all evidence in determining whether any mitigating factors existed shows that the mitigating evidence was considered. *Jeffers v. Lewis*, 38 F.3d 411, 414 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995).[16] A court is deemed to have taken into account all mitigating evidence where the court so states. *Parker v. Dugger*, 498 U.S. 308, 314–15, 111 S.Ct. 731, 735–36, 112 L.Ed.2d 812 (1991). An appellate court can cure constitutional sentencing errors by reweighing the evidence and determining the propriety of death. *Clemons v.*

**15.** A federal habeas court reviews a state court's application of a narrowing construction of an aggravating circumstance under the rational factfinder standard of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *Richmond v. Lewis*, 506 U.S. 40, 47, 113 S.Ct. 528, 534, 121 L.Ed.2d 411 (1992). A federal court will not review a state court's interpretation of a statute unless the interpretation is so untenable that it amounts to subterfuge to avoid federal review. *Knapp v. Cardwell*, 667 F.2d

1253, 1260 (9th Cir.), *cert. denied*, 459 U.S. 1055, 103 S.Ct. 473, 74 L.Ed.2d 621 (1982).

**16.** For the purposes of federal habeas review, where the defendant had a full opportunity at a hearing to present all mitigating evidence, the weight given to any one factor is within the trial court's discretion. *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984).

*Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).[17]

The state supreme court's statement is determinative. It independently considered all mitigating circumstances and thereby cured any shortcoming that occurred at sentencing. The Petitioner is not entitled to relief on claim 3.

### D. Supreme Court's Reweighing (Claim 4)

Lambright next contends that the state supreme court did not adequately reweigh the aggravating and mitigating evidence. He complains that the court considered some, but not all of the proffered mitigating evidence.

■ As shown above, the court did consider all the mitigation evidence Lambright offered. It need not specifically address each suggestion of mitigation in its written opinion. Rather, the court properly stated that it considered everything Lambright suggested, and came to an independent conclusion. No constitutional error occurred so sentencing claim 4 must be denied on the merits.

### E. Nonstatutory Aggravating Factors (Claim 5)

Sentencing claim 5 maintains that Arizona imposed the death penalty based upon numerous nonstatutory aggravating factors. This claim was raised for the first time in the Rule 32 petition. The Rule 32 court denied the claim as precluded and meritless. Lambright has not shown cause and prejudice to overcome this procedural default. Thus, this claim is precluded from federal review.

Not only is the claim precluded due to procedural default, it is meritless. The trial judge repeatedly stated on the record that he did not consider any nonstatutory factors. Moreover, the supreme court's independent review considered only the "especially heinous" aggravating factor. Sentencing claim 5 is precluded and alternatively, is denied on the merits.

### F. Finding of Intent to Kill (Claim 6)

■ Lambright claims that the trial court's finding that Lambright intended to kill Owen violated *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982)[18] because the finding was based on the unreliable statements of Foreman and Smith. Both were active participants in the crime and there was no opportunity to cross examine Smith about his statements.

In considering Lambright's and Smith's post conviction petitions, the trial court stated that it had not relied on the statements of the co-defendants against the other. That is, the court did not rely on Smith's statement in sentencing Lambright, and vice versa. There is, therefore no error.

■ It is true that Foreman was an active participant in Owen's killing and her motivation to lie was strong. Lambright and Smith cross-examined Foreman thoroughly. Much of her testimony was consistent with Lambright's own statements. The trial court's *Enmund* finding that Lambright intended to kill is entitled to a presumption of correctness. 28 U.S.C. § 2254(d); *Miller v. Fenton,* 474 U.S. 104, 105, 106 S.Ct. 445, 447, 88 L.Ed.2d 405 (1985); *Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990); *Coley v. Gonzales,* 55 F.3d 1385, 1387 (9th Cir.1995); *Palmer v. Estelle,* 985 F.2d 456, 458 (9th Cir.), *cert. denied,* 509 U.S. 928, 113 S.Ct. 3051, 125

---

17. Standards for balancing significance of aggravating and mitigating circumstances are not required where appellate review is available. *Zant v. Stephens,* 462 U.S. 862, 879–80, 103 S.Ct. 2733, 2744, 77 L.Ed.2d 235 (1983).

18. The Eighth Amendment prohibits the execution of a person "who neither took life, attempted to take life, nor intended to take life." *Enmund,* 458 U.S. at 787–88, 102 S.Ct. at 3371. However, a defendant who played a significant role in a felony that resulted in murder and who acted with reckless indifference to human life may properly be sentenced to death. *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). *See also Greenawalt v. Ricketts,* 943 F.2d 1020 (9th Cir.1991) (*Enmund* satisfied where trial court found that defendant knowingly created a grave risk of death and supreme court found that defendant was an active participant in the felonies committed), *cert. denied,* 506 U.S. 888, 113 S.Ct. 252, 121 L.Ed.2d 184 (1992).

L.Ed.2d 735 (1993); *Paradis v. Arave*, 20 F.3d 950, 959 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995). It is well supported by the record. Sufficient evidence of Lambright's intent to participate in the murder was presented and the jury was instructed on both premeditation and felony murder, so the trial court need not specifically make an *Enmund* finding of intent. *Richmond v. Lewis*, 948 F.2d 1473 (9th Cir.), *rev'd on other grounds*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992). While this Court, like the trial and appellate courts, is appalled that Foreman received complete immunity, that does not detract from the trial court's considered factual determination. Sentencing claim 6 is denied on the merits.

### G. Victim Statements (Claim 7)

Lambright contends in sentencing claim 7 that the trial court improperly relied upon the statements of Sandy's mother in imposing the death sentence. The presentence report indicated that the mother thought Lambright should die. Lambright submits that this violated the Eighth and Fourteenth Amendments.

This claim is precluded. When it was first raised in the second Rule 32 petition, the state court denied it because it was not presented on direct appeal. There is no cause and prejudice to excuse this procedural default. Sentencing claim 7 is barred from federal review.

 Even if this claim were not precluded, it would be denied on the merits. Judges are presumed to only consider relevant information in imposing capital sentences. *Jeffers*, 38 F.3d at 415. The court stated that it had not relied upon any victim statements in sentencing Lambright to death. There is no indication in the record to conclude otherwise. Further, there is no per se prohibition on the use of victim impact evidence. *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Lambright has presented nothing to overcome the presumption that the judge did not

rely upon the mother's statements and has not shown how the alleged reliance violated any rights secured by the Constitution. Sentencing claim 7 is precluded and is alternatively denied on the merits.

### H. The Presentence Report (Claim 8)

In sentencing claim 8, Lambright asserts that the trial court relied on uncorroborated, prejudicial, hearsay statements contained in the presentence report in imposing the death sentence. He complains that the court's use of this information denied him the right to confront and rebut the statements. This, he says, violated the Sixth, Eighth and Fourteenth Amendments.

Once again Lambright has procedurally defaulted on the claim. When the issue was first raised in the state court, that court ruled it precluded for failure to contemporaneously object and for failure to raise it on direct appeal. Lambright has not demonstrated cause and prejudice to excuse the default, so the claim is precluded from federal review.

 Further, this Court agrees with the State that in any event, the supreme court's de novo review cured any deficiency during sentencing. The supreme court did not rely on the presentence report and made an independent determination that the death penalty was the proper sentence.[19] Sentencing claim 8 is precluded and is alternatively denied on the merits.

### I. The Determination of Aggravating Factors (Claim 9)

 The Petitioner contends that A.R.S. § 13–703 is unconstitutional because it directs the court, rather than the jury, to determine the existence of aggravating factors. He recognizes that *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) rejected this claim and held that the Arizona sentencing scheme in which the judge alone determines aggravating and mitigating circumstances does not violate the

---

19. No constitutional violation results from a judge having a presentence report before him at sentencing where the findings made are based on evidence adduced at trial. *Clark v. Ricketts*, 958 F.2d 851 (9th Cir.1991), *cert. denied*, 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992).

Sixth Amendment.[20] There is no right to a jury determination of aggravating factors. Sentencing claim 9 is denied on the merits.

## J. The Defendant's Burden of Proof (Claim 10)

A.R.S. § 13–703 requires the defendant to prove, by a preponderance of the evidence, mitigating factors sufficiently substantial to call for leniency. Lambright argues that this burden placed on the defendant violates the Constitution. He does, however, again recognize that the United States Supreme Court rejected this argument in *Walton*. Referring to Justice Blackmun's dissent, he asks this Court to ignore *Walton*. The Court declines to do so and finds that this claim is foreclosed by *Walton*. Sentencing claim 10 is denied on the merits.

## K. Presumption of Death (Claim 11)

Lambright submits that § 13–703 unconstitutionally creates a presumption of death that the defendant must overcome by proof of substantial mitigating factors that call for leniency. This claim too was considered and rejected in *Walton*. Based upon *Walton*, sentencing claim 11 is denied on the merits.

## L. Lack of Prosecutorial Guidance (Claim 12)

In sentencing claim 12, Lambright asserts that § 13–703 contains no directions or guidelines to reduce the risk of a prosecutor arbitrarily and capriciously deciding to seek the death penalty. He cites to an Illinois district court case that he acknowledges was overruled by the Seventh Circuit. The Seventh Circuit recognized that the decision to seek the death penalty is made by a separate branch of the government and is therefore not a cognizable federal issue. *Silagy v. Peters*, 905 F.2d 986, 993–94 (7th Cir.1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1024, 112 L.Ed.2d 1106 (1991), *and reversing in part* 713 F.Supp. 1246 (C.D.Ill.

1989). This Court agrees and denies sentencing claim 12 on the merits.

## M. Discriminatory Imposition of the Death Penalty (Claim 13)

Lambright contends that the death penalty is disproportionately imposed upon poor men convicted of killing a Caucasian. This, he says, is discrimination in violation of the Eighth and Fourteenth Amendments. The Petitioner relies upon the dissent in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) in asking this Court to grant relief.

It is the opinion of the United States Supreme Court, not the dissent, upon which this Court must rely. *McCleskey* requires proof of purposeful discrimination. 481 U.S. at 292–93, 107 S.Ct. at 1767. An offering of statistical evidence is not enough. *Harris v. Pulley*, 885 F.2d 1354 (9th Cir. 1988), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990). There are no indicia of purposeful discrimination in this record. Also, the supreme court conducted a proportionality review and found that Lambright's sentence was proportional to the sentence imposed upon persons who committed similar crimes. Where, as here, the state courts have acted pursuant to a properly drawn statute and there is adequate guidance of discretion, the federal courts will not engage in a factual case-by-case comparison to review consistency. *Ford v. Strickland*, 696 F.2d 804, 819 (11th Cir.) (en banc), *cert. denied*, 464 U.S. 865, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). There is simply no evidence in this case that would even suggest purposeful discrimination. Sentencing claim 13 is denied on the merits.

## N. Judge Determination of the Sentence (Claim 14)

Lambright claims that A.R.S. § 13–703 unconstitutionally requires the court, rather than the jury, to determine if the death penalty is the appropriate sen-

---

**20.** The Ninth Circuit has also rejected constitutional challenges to Arizona's judge-only sentencing statute in *Carriger v. Lewis*, 971 F.2d 329 (9th Cir.1992), *cert. denied*, 507 U.S. 992, 113 S.Ct. 1600, 123 L.Ed.2d 163 (1993); *Clark v. Ricketts*,

958 F.2d 851 (9th Cir.1991), *cert. denied*, 506 U.S. 838, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992); *Richmond v. Lewis*, 948 F.2d 1473 (9th Cir. 1992), *rev'd on other grounds*, 506 U.S. 40, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992).

tence. As stated above, there is no right to a jury determination of the sentence in a capital case. The constitution does not mandate that a death sentence be imposed by a jury. *Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). A state may distribute sentencing power as it wishes. *Spaziano v. Florida,* 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984). Sentencing claim 14 is denied on the merits.

### O. Notice of Aggravating Factors (Claim 15)

■ Lambright claims that he did not receive adequate notice of the aggravating circumstances that the prosecution and the court relied upon in sentencing him to death. He does not, however, provide any basis for his claim. As explained above, only one aggravating factor was relied upon and it was mentioned in the prosecutor's pre-hearing aggravation memorandum filed with the court. Lambright received adequate notice under *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970). Even if the sentencing court had relied upon previously unarticulated aggravating factors, the supreme court in its independent review did not. Any error at sentencing was cured on direct appeal.

Not only is this claim without merit, it is also precluded from federal review due to unexcused procedural default. The Rule 32 court held this claim precluded for failure to raise it on direct appeal. Lambright has not shown cause and prejudice to overcome this default. As such, sentencing claim 15 is precluded and is alternatively denied on the merits.

### P. Methods of Execution (Claim 16)

In his final claim, Lambright asserts that death by lethal gas or by lethal injection is cruel and unusual punishment violative of the Eighth and Fourteenth Amendments. He describes in detail what he considers to be the long, painful death that results from the

use of lethal gas and suggests that this method no longer comports with modern society's notions of decency.

■ Section 13–704(B) allows Lambright to elect the method of his execution. A statute that allows the condemned to choose between methods is not cruel and unusual. *Campbell v. Blodgett,* 978 F.2d 1502, 1517–18 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). By choosing injection over gas, Lambright has the power to render the lethal gas objection moot. *See id.* at 1518 ("By exercising his right to choose lethal injection, Campbell has a means to moot his constitutional objection ... [and] to make his problem disappear."). Lambright's claim regarding lethal gas does not require judicial intervention.

If Lambright's lethal gas claim were justiciable, this Court likely would, in light of *Fierro v. Gomez,* 77 F.3d 301 (9th Cir.1996),[21] agree that execution by lethal gas violates the Eighth Amendment's prohibition of cruel and unusual punishments. In *Fierro,* a 42 U.S.C. § 1983 case, the Ninth Circuit recently declared California's protocol for lethal gas executions unconstitutional. Lambright's concerns about this method of execution are well taken.

Nonetheless, Arizona has provided Lambright with the less controversial option of lethal injection. Therefore, the Court is called upon to decide whether execution by lethal injection is cruel and unusual.

■ The Eighth Amendment proscribes "punishments which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society.'" *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Punishments are incompatibly cruel if they involve "torture or a lingering death," *In re Kemmler,* 136 U.S. 436, 447, 10 S.Ct. 930, 933, 34 L.Ed. 519 (1890), or "involve the unnecessary and wan-

---

**21.** *Cf. Gray v. Lucas,* 710 F.2d 1048 (5th Cir.) (declining to find sufficient evidence to determine that lethal gas method of execution constitutes cruel and unusual punishment), *cert. denied,* 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983); *Hunt v. Nuth,* 57 F.3d 1327 (4th Cir.1995) (refusing to conclude that lethal gas execution is unconstitutional), *cert. denied,* —— U.S. ——, 116 S.Ct. 724, 133 L.Ed.2d 676 (1996).

ton infliction of pain." *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976). The determination of whether a punishment violates these principles "should be informed by objective factors to the maximum possible extent." *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). One of the most important objective factors is the contemporary emerging legislative trends throughout the nation. *Enmund v. Florida,* 458 U.S. 782, 788–90, 102 S.Ct. 3368, 3371–73, 73 L.Ed.2d 1140 (1982).

■ The Petitioner asks this Court to treat lethal injection just like lethal gas. He relies on a newspaper reporter's account of a lethal injection execution witnessed in Arizona. Lambright says that the reporter described that thirty seconds after the first of the three drugs was administered, the condemned man's neck jerked sharply. He stared at the ceiling and his chest heaved, then he was motionless. Presumably, this account was published in the *Arizona Daily Star.*[22] Although perhaps not well supported, this Court accepts Lambright's conveyance of the reporter's account as true.

Accepting it as true that lethal injection results in a sharp jerk and noticeable breathing, followed by motionlessness, the Court finds that the Petitioner has not met his burden of showing that this method involves torture, lingering death, unnecessary, wanton pain or any other Eighth Amendment concern. This account portrays a quick death, without significant observed indications of pain or distress. This evidence does not establish that death by lethal injection is a cruel and unusual punishment.

■ Moreover, this Court agrees with *LaGrand v. Lewis,* 883 F.Supp. 469, 471 (D.Ariz.1995) that "lethal injection comports with current societal norms." As *LaGrand* noted, at least twenty-six states and the federal government have opted for the method of lethal injection, *id.* (citing *Fierro,* 865 F.Supp. 1387, 1406 (N.D.Cal.1994), *aff'd by* 77 F.3d 301 (9th Cir.1996)), and every court to consider the constitutionality of lethal ob-

jection has upheld its use. *Id.* (collecting cases). Lethal injection grows in popularity and is now the majority trend in the United States. *See e.g., Campbell v. Wood,* 18 F.3d 662 (9th Cir.1994) (discussing the growing use of lethal injection but finding hanging constitutional) (en banc), *cert. denied,* —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

Lambright does not make any argument that contemporary American society views lethal injection with the same distaste that he claims is evolving with respect to lethal gas. The Court has not discovered any such objective evidence. Therefore, Lambright has not shown that lethal injection violates the Eighth Amendment. Even assuming that lethal gas does offend contemporary notions of decency, the election afforded Lambright provides him a constitutional method of execution.

### CONCLUSION

The Court has carefully reviewed the entire state record as well as the complete district court file. It has considered the arguments advanced by the parties and the applicable law. Based upon the foregoing, the Court finds no constitutional error allowing the Court to grant Lambright relief. Accordingly,

**IT IS ORDERED** that Joe Lambright's "Amended Petition for Writ of Habeas Corpus by a Person in State Custody" filed February 23, 1995 is **DENIED** and is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the Order staying execution originally issued on April 14, 1987, and subsequently continued, is **VACATED.**

---

**22.** The Petitioner neither cites the article, nor provides an affidavit from the reporter.